UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
────────────────────────────────

STEPHEN MORVILLO,

               *Plaintiff*,

-against-

COUNTY OF SUFFOLK; SUFFOLK COUNTY SHERIFF'S OFFICE; CHRISTOPHER HOLFESTER; AND EDWARD MCCOMISKEY,

               *Defendants*.

22-CV-3775 (ARR) (ARL)

NOT FOR ELECTRONIC OR PRINT PUBLICATION

OPINION & ORDER

ROSS, United States District Judge:

Plaintiff, Stephen Morvillo, brings this action against defendants Christopher Holfester and Edward McComiskey (together, "the defendant deputies"), as well as the defendant deputies' employer (the Suffolk County Sheriff's Office), and the County of Suffolk. Plaintiff raises a variety of claims against defendants under 42 U.S.C. § 1983 and New York law that arise from the events surrounding the plaintiff's arrest by the defendant deputies on June 28, 2021. Defendants move for summary judgment on all counts of plaintiff's complaint. For the reasons set forth below, I grant defendants' motion.

### BACKGROUND[1]

On June 28, 2021, defendants Holfester and McComiskey, both deputies of the Suffolk County Sheriff's Office, came to plaintiff's residence. Defs.' 56.1 Statement ¶ 17. At the time,

---

[1] The following facts are derived from the parties' depositions, exhibits, memoranda, and respective Statements of Fact submitted under Local Rule 56.1. *See* Defs.' Mem. Supp. Summ. J. ("Defs.' Mot."), ECF No. 31-2; Defs.' Rule 56.1 Statement ("Defs.' 56.1 Statement"), ECF No. 31-3; Pl.'s Mem. Opp'n Summ. J. ("Pl.'s Opp'n"), ECF No. 32; Pl.'s Rule 56.1 Counterstatement ("Pl.'s 56.1 Statement"), ECF No. 32-2; Defs.' Reply Supp. Summ. J. ("Defs.' Reply"), ECF No. 33. Unless otherwise noted, the facts as recounted here are undisputed. All evidence is construed in the light most favorable to plaintiff as the non-moving party. *See Marvel Characters, Inc. v.*

plaintiff was subject to two bench warrants, which had been issued by a state-court judge after plaintiff received citations for various traffic violations and subsequently failed to appear in court. *Id.* ¶¶ 15–16. The deputies asked plaintiff to confirm that he was Stephen Morvillo and then entered his home. *Id.* ¶ 18. Plaintiff told the deputies that he needed to put his shoes on, put them on, and fled his house through the back or side door. *Id.* ¶¶ 21, 109, 111, 173–74.

Pursued by defendant Holfester, plaintiff hopped a four-foot chain link fence and entered his neighbor's front yard. *Id.* ¶¶ 25, 175. Plaintiff then hopped a second fence and entered the same neighbor's back yard. *Id.* ¶¶ 26, 176–78. Around this point, plaintiff's pants and shoes came off, either in the process of plaintiff's falling to the ground from atop the second fence (as defendant Holfester claims) or because defendant Holfester grabbed plaintiff's pants and ripped them off (as plaintiff asserts). *Id.* ¶¶ 31–32, 178; Pl.'s 56.1 Statement ¶ 178.1. With defendant Holfester continuing to pursue him, plaintiff hopped a third fence and entered a different neighbor's back yard. Around this time, plaintiff and defendant Holfester had a physical altercation, which was filmed by a neighbor. Defs.' 56.1 Statement ¶¶ 27, 178–80.

While the parties dispute the nature of the altercation and many of the details, the gist is as follows. As plaintiff sought to climb the fence, defendant Holfester grabbed plaintiff and pulled him down. *Id.* ¶ 179. According to plaintiff, defendant Holfester used a "chokehold" on plaintiff, causing plaintiff to "see stars." *Id.* ¶ 28; Pl.'s 56.1 Statement ¶ 34.1. Plaintiff continued to try to climb the fence, and defendant Holfester then pulled him to the ground. Defs.' 56.1 Statement ¶ 180. While plaintiff was on the ground, defendant Holfester drew his firearm, aimed it at plaintiff, and shouted "let me see your hands." *Id.*; Pl.'s 56.1 Statement ¶ 34.3. Plaintiff then stood and began to climb the fence again. Defs.' 56.1 Statement ¶ 182; Pl.'s 56.1 Statement ¶ 34.4. According

---

*Simon*, 310 F.3d 280, 286 (2d Cir. 2002).

2

to plaintiff, as he climbed the fence, defendant Holfester pressed his gun against plaintiff's shoulders and/or back, which plaintiff felt as a "cold" touch that could have been a gun or taser. Def.'s 56.1 Statement ¶¶ 29, 33; Pl.'s 56.1 Statement ¶ 34.4. As plaintiff continued to climb the fence, defendant Holfester returned his gun to its holster. Defs.' 56.1 Statement ¶ 182; Pl.'s 56.1 Statement ¶ 34.5.

After plaintiff successfully made it over the fence, defendant Holfester did the same. Defs.' 56.1 Statement ¶ 186. Plaintiff hopped one more fence, and defendant Holfester followed in pursuit. *Id.* Once over the last fence, defendant Holfester grabbed plaintiff, and both fell to the ground. *Id.* ¶ 188. Plaintiff asserts that defendant Holfester brought plaintiff to the ground by shoving his knee into plaintiff's back, which prevented plaintiff from breathing, and that defendant Holfester "gr[ound] plaintiff's face into the concrete" while he was on the ground. *Id.* ¶¶ 43–44; Pl.'s 56.1 Statement ¶¶ 192.1–2. Defendant Holfester, however, denies putting his knee into plaintiff's back or pushing plaintiff's head into the ground. Defs.' 56.1 Statement ¶ 192.

After bringing plaintiff to the ground, defendant Holfester called out to his partner, defendant McComiskey, who was driving a vehicle nearby, to indicate that he had plaintiff in custody. *Id.* ¶¶ 113, 190. When defendant McComiskey arrived at the scene, plaintiff was face down on the ground, with defendant Holfester holding him down with his left hand. *Id.* ¶ 118. Either defendant Holfester or defendant McComiskey applied handcuffs to plaintiff's wrists and ankles. *Id.* ¶¶ 46, 120, 193. According to defendant Holfester, plaintiff refused his instruction to put his hands behind his back and attempted to roll over and conceal his hands. *Id.* ¶ 191. Plaintiff, however, claims that after being taken to the ground by defendant Holfester, he "gave up" and permitted himself to be arrested. Pl.'s 56.1 Statement ¶ 191.1. At this point, plaintiff was wearing nothing but a torn T-shirt. Defs.' 56.1 Statement ¶ 193. A neighbor offered plaintiff a pair of pants,

3

which the deputies assisted him in putting on, taking plaintiff's leg shackles off in the process. *Id.* ¶¶ 47, 194.

The deputies then placed plaintiff in their unmarked vehicle. *Id.* ¶ 195. Defendants assert that (1) they did not reapply the leg shackles before placing plaintiff in the vehicle, (2) they placed plaintiff in the backseat on the driver's side, and (3) they attached plaintiff's seatbelt. *Id.* Plaintiff, however, claims that (1) he was shackled by both the wrists and the ankles while in the vehicle, (2) he was placed in the backseat in a sideways position, facing the front of the car, and (3) he was placed in the vehicle without a seatbelt. Pl.'s 56.1 Statement ¶¶ 48.1, 124.1–2. According to plaintiff, the deputies drove in an "aggressive manner," causing plaintiff's body to slide around the backseat and leading the handcuffs to grind into plaintiff's wrists and ankles. *Id.* ¶ 49.1. Plaintiff claims to have felt pain in his shoulder, spine, wrists, ankles, and right hip during the drive. *Id.* ¶¶ 49.3–4. Plaintiff further claims to have told the deputies that the handcuffs were too tight and that he could not breathe, to which the deputies responded with derisive comments. *Id.* ¶¶ 49.2, 49.5. The defendant deputies, however, dispute this account. They agree that plaintiff complained of shortness of breath but assert that plaintiff did not make any complaints regarding the tightness of his handcuffs. Defs.' 56.1 Statement ¶¶ 127, 197. They also deny making any derisive comments about defendant's claimed shortness of breath. *Id.* ¶¶ 129, 198.

Plaintiff then told the deputies he needed to go the hospital. *Id.* ¶ 50. The deputies then took plaintiff to a hospital in Bay Shore, where he was admitted, his chief complaint being shortness of breath. *Id.* ¶¶ 51, 54. Plaintiff's shortness of breath resolved itself without medical intervention while he was in the hospital. *Id.* ¶ 55. X-rays were conducted but did not reveal any injuries. *Id.* ¶¶ 56–57. According to plaintiff, he had abrasions and bruising on his right side, hip, and forehead, as well as dried blood on his ankles, all of which were later documented in

4

photographs taken by plaintiff's partner. *Id.* ¶ 53; Pl.'s 56.1 Statement ¶ 53.5. Plaintiff did not receive treatment for these lacerations while at the hospital. Defs.' 56.1 Statement ¶ 58. According to plaintiff, the defendant deputies instructed him to tell their supervisor that the lacerations on his body were due to falling from a fence (rather than due to the defendant deputies' conduct). *Id.* ¶ 52. The deputies deny giving plaintiff such an instruction. *Id.* ¶ 135.

After spending about ninety minutes at the hospital, the defendant deputies took plaintiff to a police station for processing. *Id.* ¶ 59. Plaintiff was arraigned the next day for resisting arrest, but that charge was eventually dismissed, and plaintiff was ultimately convicted of a disorderly conduct offense. *Id.* ¶¶ 67–68, 233–34. Plaintiff claims that due to his injuries he was bedridden for four days after his arraignment, during which he was unable to work. *Id.* ¶ 71. He further asserts that "his ankles were destroyed," "his wrists were black and blue," and that he "could not walk without pain for four or five days." Pl.'s 56.1 Statement ¶ 71.1.

Approximately five hours after plaintiff's arrest, defendant Holfester wrote a use of force report. Defs.' 56.1 Statement ¶ 214. In that report, defendant Holfester reported using physical force on plaintiff, but did not check the box indicating that he brandished his weapon, nor the box indicating that he used a chokehold. *Id.* ¶ 215; Pl.'s 56.1 Statement ¶ 215.1. According to defendant Holfester, he did not report brandishing his weapon because he did not recall doing so. *Id.* ¶ 210.2. Several months later, in October 2021, defendant Holfester learned that the video of the altercation between him and plaintiff had been posted to a social media site. Defs.' 56.1 Statement ¶ 208. After viewing the video, defendant Holfester completed a supplemental use of force report stating that he unholstered his weapon during the altercation with plaintiff. *Id.* ¶ 210.

5

On June 27, 2022, plaintiff filed the complaint initiating this case. *See* Compl., ECF No. 1. Following discovery, defendants filed the instant motion seeking summary judgment on all of plaintiff's claims, which is now fully briefed.

## LEGAL STANDARD

"Summary judgment is appropriate only where the record shows 'that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 80 (2d Cir. 2014) (quoting Fed. R. Civ. P. 56(a)). A material fact is one that "can affect the outcome under the applicable substantive law." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). A genuine dispute is one that can "reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Summary judgment is appropriate when "there can be but one reasonable conclusion as to the verdict." *Rupp v. Buffalo*, 91 F.4th 623, 634 (2d Cir. 2024) (quoting *Anderson*, 477 U.S. at 255).

The party seeking summary judgment carries the burden of proving that there is no genuine dispute of material fact, and I must draw all reasonable inferences in favor of the nonmoving party. *See Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1223–24 (2d Cir. 1994). Nevertheless, "[t]he nonmoving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

## DISCUSSION

### I.  Plaintiff's Excessive Force Claim

In his second cause of action, plaintiff asserts a claim under 42 U.S.C. § 1983 for excessive force in violation of plaintiff's constitutional rights. *See* Compl. ¶¶ 39–55. Specifically, plaintiff

6

contends that defendants Holfester and/or McComiskey used excessive force by (1) applying handcuffs too tightly to plaintiff's wrists and ankles; (2) brandishing a firearm; and (3) using an "illegal chokehold" on plaintiff, as well as "grinding" plaintiff's face into the ground and shoving a knee into plaintiff's back. Defs.' Mot. at 5; Pl.'s Opp'n at 2–3. Defendants argue that none of those purported occurrences rise to the level of excessive force. *See* Defs.' Mot. at 5–11. For the reasons that follow, I grant summary judgment for defendants on plaintiff's excessive force claim.

### A.    Use of Handcuffs

"Courts apply a separate standard to claims for excessive force in the use of handcuffs." *Sachs v. Cantwell*, No. 10-CV-1663, 2012 WL 3822220, at *14 (S.D.N.Y. Sept. 4, 2012). While "overly tight handcuffing can constitute excessive force," *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008), it is also the case that "[f]requently, a reasonable arrest involves handcuffing the suspect, and to be effective handcuffs must be tight enough to prevent the arrestee's hands from slipping out," *Esmont v. City of New York*, 371 F. Supp. 2d 202, 214 (E.D.N.Y. 2005) (citation omitted). Thus, "in evaluating the reasonableness of handcuffing, a Court is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." *Id.* at 215. With respect to the injury requirement, while the injuries "need not be severe or permanent," they "must be more than merely de minimis." *Usavage v. Port Auth. of N.Y. & N.J.*, 932 F. Supp. 2d 575, 592 (S.D.N.Y. 2013) (citations and internal quotation marks omitted); *see also Higginbotham v. City of New York*, 105 F. Supp. 3d 369, 377 (S.D.N.Y. 2015) (collecting cases where bruising, swelling, and cuts were found insufficient to sustain excessive force claims related to handcuffing). Moreover, "[u]nsubstantiated claims of nerve damage, in the absence of

7

corroborating medical evidence, are insufficient to support a claim of excessive force from handcuffing." *Esmont*, 371 F. Supp. 2d at 215 (collecting cases).

Applying these standards, I conclude that defendants are entitled to summary judgment on plaintiff's handcuffing claim. Certainly, plaintiff has presented evidence, in the form of his own sworn deposition testimony, that defendants Holfester and/or McComiskey attached the handcuffs too tightly[2] and proceeded to ignore plaintiff's complaints about the handcuffs' tightness. *See* Pl.'s 56.1 Statement ¶¶ 49.1–5. And, while defendants dispute these factual assertions, a "plaintiff's testimony . . . alone" may be "sufficient to support an excessive force claim on a motion for summary judgment." *Pelayo v. Port Auth.*, 893 F. Supp. 2d 632, 642 (S.D.N.Y. 2012). Plaintiff's claim fails, however, because he has failed to present evidence of an injury meeting the threshold for excessive force in the use of handcuffs—that is, an injury that is "more than merely 'de minimis.'" *Usavage*, 932 F. Supp. 2d at 592.

To summarize, plaintiff's statements regarding the injuries caused by the handcuffs are as follows. Plaintiff "felt pain in his wrists and ankles," in addition to his shoulder, spine, and right hip, during the drive from the scene of plaintiff's arrest to the hospital. Pl.'s 56.1 Statement ¶¶ 49.3–4. Plaintiff further asserts that his partner subsequently took photographs of his injuries, which depict "dried blood on plaintiff's ankles," in addition to "abrasions and bruising" on plaintiff's right side, right hip, and forehead.[3] *Id.* ¶ 53.5. While plaintiff was in the hospital,

---

[2] According to plaintiff, the defendant deputies injured him both by attaching the handcuffs too tightly and by then driving recklessly, causing plaintiff to "slid[e] around the backseat." Pl.'s Opp'n at 4. This allegation does not, however, change the standard I must apply to plaintiff's claim as it concerns the use of handcuffs. *See Usavage*, 932 F. Supp. 2d at 594 (noting that, even if a plaintiff's excessive force claim "alleges a variation on th[e] familiar theme," any allegation that "an officer used handcuffs as a weapon against the arrestee [] falls squarely within the imagined scenario for which this rule was created").

[3] Plaintiff has submitted copies of these photographs as an exhibit attached to his brief in

8

however, he was not treated for lacerations or scratches, and X-rays were taken but did not reveal any injuries. Defs.' 56.1 Statement ¶¶ 56–58.

Even viewing the evidence in the light most favorable to plaintiff, as I must, I find that plaintiff is unable to make the required showing of an injury beyond the de minimis level. First, while plaintiff has presented evidence that he felt pain in his wrists and ankles at the time of the handcuffing, *see* Pl.'s 56.1 Statement ¶¶ 49.3–4, "temporary injuries, which did not cause long-lasting pain and did not require medical attention, cannot form the basis of an excessive force [handcuffing] claim." *Othman v. City of New York*, No. 13-CV-4771, 2018 WL 1701930, at *7 (E.D.N.Y. Mar. 31, 2018). Second, while the photographs taken by plaintiff's partner purportedly depict "dried blood on plaintiff's ankles," Pl.'s 56.1 Statement ¶ 53.5, plaintiff provides no evidence that the source of the dried blood was the defendant deputies' use of handcuffs. Given the undisputed fact that both plaintiff and defendant Holfester climbed over and descended from no fewer than four fences during the pursuit—there is no basis for a factfinder to infer that the dried blood on plaintiff's ankles was due to the application of handcuffs rather than due to one or more falls from a backyard fence. *See* Defs.' 56.1 Statement ¶¶ 175–88.

Finally, plaintiff's remaining claims of injury due to the use of handcuffs are simply unsubstantiated by the record. While plaintiff claims that "his ankles were destroyed" and "his wrists were black and blue," leaving him unable to "walk without pain for four or five days," Pl.'s 56.1 Statement ¶ 71.1, these claims are belied by objective medical evidence from plaintiff's brief stay in the hospital. *See* Defs.' 56.1 Statement, Ex. I, ECF No. 31-12. These records show that

---

opposition. *See* Pl.'s Opp'n, Ex. 8, ECF No. 32-10. The parties dispute whether these photographs were properly produced to defendants' counsel during discovery. *Compare* Defs.' 56.1 Statement ¶ 53, *with* Pl.'s 56.1 Statement ¶¶ 53.1–5. I need not resolve this factual dispute, however, and I rely instead only on plaintiff's sworn testimony as to the photographs' contents.

9

plaintiff's principal discharge diagnosis was "shoulder pain," that his condition at the time of discharge was "[i]mproved," and that plaintiff declined pain-controlling medication. *Id.* at 8. Thus, plaintiff's "[u]nsubstantiated claims" of injury to his wrists and/or ankles, "in the absence of corroborating medical evidence, are insufficient to support a claim of excessive force from handcuffing." *Esmont*, 371 F. Supp. 2d at 215. If the medical records indicated that plaintiff had been treated for *any* injuries to his wrists and/or ankles, even relatively minor or fleeting ones, my conclusion might be a different one. *See, e.g.*, *Hodge v. Vill. of Southampton*, 838 F. Supp. 2d 67, 77–78 (E.D.N.Y. 2012) (denying summary judgment where the plaintiff was treated for bruising at a hospital and discharged with Motrin). But here, in the absence of any such medical evidence, plaintiff's bare allegations are insufficient for his excessive force claim to survive summary judgment.

### B. Brandishing of a Weapon

I turn now to plaintiff's claim of excessive force based on defendant Holfester's brandishing of a firearm during his pursuit of plaintiff. Defendants argue that "merely drawing weapons when effectuating an arrest does not constitute excessive force as a matter of law." Defs.' Mot. at 8 (quoting *Dunkelberger v. Dunkelberger*, No. 14-CV-3877, 2015 WL 5730605, at *15 (S.D.N.Y. Sept. 30, 2015)). In response, plaintiff argues that the cases cited by defendants "are distinguishable" because, here, defendant Holfester "took his firearm and pressed it up against plaintiff's back and shoulder area." Pl.'s Opp'n at 9 (citing Pl.'s 56.1 Statement ¶¶ 34.1–6). Defendants have the better of the arguments, and I therefore grant summary judgment to defendants on this claim.

As defendants note, "the vast majority of cases within the Second Circuit" conclude that "merely drawing weapons" in the course of an arrest does not constitute excessive force as a matter

of law. *Dunkelberger*, 2015 WL 5730605, at *15 (collecting cases); *see also, e.g.*, *Mittelman v. Cnty. of Rockland*, No. 07-CV-6382, 2013 WL 1248623, at *13 (S.D.N.Y. Mar. 26, 2013) ("Likewise insufficient is Plaintiff's assertion that the officers pointed guns at him. A threat of force does not constitute excessive force."). Plaintiff's allegation that defendant Holfester "pressed [his gun] up against plaintiff's back and shoulder area," Pl.'s Opp'n at 9, does not meaningfully alter the analysis, because plaintiff has provided no evidence that defendant Holfester's use of the gun caused him any injury.[4] Since "[a]n arrestee must prove some injury, even if insignificant, to prevail in an excessive force claim," *Landy v. Irizarry*, 884 F. Supp. 788, 799 n.14 (S.D.N.Y. 1995), and plaintiff has not asserted any injury due to defendant Holfester's alleged brandishing of a weapon, defendants are entitled to summary judgment on this claim.

### C. Use of the Purported Chokehold/Physical Force

Finally, plaintiff claims that defendant Holfester used excessive force in performing a chokehold on plaintiff, "shov[ing] his knee in[to] plaintiff's back" to bring him to the ground, and "grinding plaintiff's face into the concrete." Pl.'s 56.1 Statement ¶¶ 192.1–2; *see also* Defs.' 56.1 Statement ¶¶ 43–44. The defendant deputies deny ever using a chokehold on plaintiff, putting their knees into plaintiff's back, or pushing his head into the ground. *Id.* ¶¶ 139, 192. Viewing the evidence in the light most favorable to plaintiff, there may be some genuine dispute of material fact as to whether the defendant deputies' actions constituted excessive force. I nevertheless grant summary judgment to defendants because the defendant deputies are, in any event, entitled to qualified immunity.

---

[4] I do not suggest that there are absolutely no circumstances in which an express threat made at gunpoint could constitute excessive force. *See, e.g.*, *Mills v. Fenger*, 216 F. App'x 7, 9 (2d Cir. 2006) (noting that Second Circuit law "could very well support [a] claim that a gunpoint death threat issued to a restrained and unresisting arrestee represents excessive force"). In this case, however, no such circumstances are present.

11

With respect to the purported chokehold, I am unable to discern any genuinely disputed issue of material fact that would defeat defendants' motion for summary judgment on this claim. First, I note that the entire altercation in question is depicted in a video, which defendants have included as an exhibit to their motion and which I have reviewed. Defs.' Mot., Ex. E, ECF No. 31-8. As shown by the video, (1) the purported chokehold lasted no more than seven seconds; (2) it is unclear whether defendant Holfester's hands were wrapped around plaintiff's neck, or rather, as defendant Holfester claims, around plaintiff's "chest or clavicle area," Defs.' 56.1 Statement ¶ 218; and (3) for the entire duration of the purported chokehold, plaintiff continued to actively resist, including by placing one foot on top of the fence he was attempting to climb. *See Benny v. City of Long Beach*, No. 22-1863, 2023 WL 8642853, at *1 (2d Cir. Dec. 14, 2023) (viewing facts on summary judgment "in the light depicted by the video tape" (citation and quotation marks omitted)), *cert. denied*, 144 S. Ct. 1354 (2024).

Thus, even construing the evidence in the light most favorable to plaintiff, the most that can be said is that defendant Holfester *may* have wrapped his arms around plaintiff's neck and applied some degree of pressure for approximately seven seconds while plaintiff was actively seeking to evade arrest by climbing a fence. Moreover, immediately after being released from the purported chokehold, plaintiff resumed his attempt to climb the fence, and while plaintiff claims to have "see[n] stars," Defs.' 56.1 Statement ¶ 33, he also admits that the purported chokehold did not cause him to lose consciousness, Pl.'s 56.1 Statement ¶ 40. With these specific facts in mind, I am persuaded that the purported chokehold cannot have constituted excessive force. *See Graham v. Connor*, 490 U.S. 386, 396–97 (1989) (noting that the standard for excessive force under the Fourth Amendment is one of "objective reasonableness," which "must embody allowance for the fact that police officers are often forced to make split-second judgments . . . about the amount of

force that is necessary in a particular situation").

As for plaintiff's claim that defendant Holfester "shoved his knee in[to] plaintiff's back" and "gr[ound] plaintiff's face into the concrete," *id.* ¶¶ 192.1–2, the parties do dispute exactly what happened at the time defendant Holfester placed plaintiff under arrest. While it is undisputed that, after a long pursuit, defendant Holfester "brought [p]laintiff to the ground" in order to arrest him, *id.* ¶ 190, the parties' accounts otherwise differ sharply, and there is no video evidence to corroborate either party's version of the facts. Nevertheless, even assuming plaintiff's account is the most accurate one, I grant defendants' motion on this claim because they are entitled to qualified immunity. The doctrine of qualified immunity protects government officials, like the defendant deputies here, from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity is available where "(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015). As I explain in further detail below, I conclude that the defendant deputies are entitled to qualified immunity because it was objectively reasonable for them to believe that their conduct was not unlawful.

In reaching this conclusion, I am guided by the standard for "objective reasonableness" set forth by the Supreme Court in *Graham*.[5] The *Graham* Court instructed courts evaluating excessive

---

[5] No qualified immunity defense was raised in *Graham*, which was decided under the "objective reasonableness" standard applicable to Fourth Amendment excessive force claims themselves. 490 U.S. at 399 n.12. But subsequent case law suggests that "the two standards of reasonableness"—that under the Fourth Amendment itself and that under the doctrine of qualified immunity—differ from each other minimally, if at all. *See Finnegan v. Fountain*, 915 F.2d 817, 824 n.11 (2d Cir. 1990). To the extent that there is a difference between the two standards, the qualified immunity analysis is even more generous to police officers because it "acknowledges that reasonable

force claims to consider "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [wa]s actively resisting arrest or attempting to evade arrest by flight." *Id.* Here, the facts relevant to the first and third factors are basically undisputed. The defendant deputies were seeking to arrest plaintiff for failure to appear in court on traffic infractions, and all those offenses were undisputably minor. *See* Pl.'s Opp'n at 6. But while plaintiff's original offense was not severe, he also made a determined effort to evade arrest, including by climbing over at least five backyard fences with a deputy sheriff in pursuit. *See* Defs.' Mot. at 8–10. As to the second factor—whether plaintiff "pose[d] an immediate threat," *Graham*, 480 U.S. at 396, to the defendant deputies' safety—the record is less clear. Defendant Holfester claims that, during the pursuit, "he feared for his safety because [p]laintiff was actively resisting arrest" and because there was backyard debris that plaintiff could potentially have picked up and used as a weapon. Defs.' Mot. at 9. Plaintiff, on the other hand, stresses the fact that he was "half-naked" and that he "did not hit, kick or strike Holfester during the pursuit." Pl.'s Opp'n at 7. Plaintiff argues on this basis that "there was no reason for Holfester to believe that plaintiff had any weapons on his person" and that "there was no reason to believe that plaintiff was violent." *Id.*

Taking all this into account, I am convinced that it was objectively reasonable for the defendant deputies to believe their actions were lawful, given the circumstances of plaintiff's efforts to evade arrest. Although plaintiff's initial failure to appear in court on traffic violations was obviously a minor infraction, his subsequent efforts to escape the defendant deputies were remarkably persistent. While I note that plaintiff "did not hit, kick or strike" defendant Holfester,

---

mistakes can be made as to the *legal* constraints on particular police conduct." *Saucier v. Katz*, 533 U.S. 194, 205 (2001) (emphasis added), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).

14

Pl.'s Opp'n at 7, the undisputed facts, including the video evidence, show plaintiff exerting considerable force in his efforts to prevent defendant Holfester from arresting him. It was therefore objectively reasonable for defendant Holfester to fear that plaintiff could turn violent at any moment, including by picking up an item of backyard debris to use as a weapon. To reiterate, the purported actions that plaintiff claims constituted excessive force include (1) holding plaintiff for approximately seven seconds in an alleged chokehold, which did not cause plaintiff to lose consciousness, Pl.'s 56.1 Statement ¶ 40; (2) "shov[ing] his knee in[to] plaintiff's back" to bring him to the ground, *id.* ¶ 192.1; and (3) "grinding plaintiff's face into the concrete," *id.* ¶ 192.2. Under the circumstances of the pursuit and plaintiff's manifest resistance to being arrested, it was objectively reasonable for defendant Holfester to believe these actions were both lawful and necessary to effectuate the arrest. I therefore grant summary judgment to defendants on plaintiff's excessive force claim on the grounds of qualified immunity.

## II. Plaintiff's Assault and Battery Claim

In addition to his claim of excessive force arising under 42 U.S.C. § 1983, plaintiff also brings a claim for assault and battery arising under New York law. *See* Compl. ¶¶ 39–50. Defendants argue that this claim should be dismissed for the same reasons as plaintiff's claim under § 1983, as "[t]he standards for assessment of a state law assault and battery claim are identical to those for excessive force." Defs.' Mot. at 11 (citing *Humphrey v. Landers*, 344 F. App'x 686, 688 (2d Cir. 2009)). In response, plaintiff contends that his assault and battery claim could survive even if his excessive force claim fails. Pl.'s Opp'n at 10–11. Specifically, plaintiff argues (1) that "a state law claim for assault and battery does not require plaintiff to suffer an injury"; and (2) that defendants are not entitled to qualified immunity under New York law. *Id.* at 10. For the reasons that follow, I grant summary judgment to defendants on plaintiff's assault and

15

battery claim.

First, I reject plaintiff's assertion that his battery claim, as it pertains to the defendant deputies' use of handcuffs, can survive without alleging an injury above the de minimis level. Plaintiff correctly cites the standard for a claim of battery under New York law: namely, plaintiff must show "that there was bodily contact, that the contact was offensive, that is, wrongful under all the circumstances, and that [the] defendant intended to make the contact." Pl.'s Opp'n at 10–11 (quoting *Silipo v. Wiley*, 30 N.Y.S.3d 716, 720 (App. Div. 2016)). But plaintiff has cited no authority stating that a contact may be "offensive" for the purposes of a battery claim without causing an actual injury; *cf. Silipo*, 30 N.Y.S.3d at 721 (noting that the plaintiff in that case alleged "debilitating psychological symptoms" including posttraumatic stress disorder and adjustment disorder with anxiety, "both of which were causally related to the offensive contact"). Thus, plaintiff's battery claim regarding the defendant deputies' use of handcuffs fails for the same reason as plaintiff's § 1983 claim—namely, plaintiff's failure to adduce evidence of an injury rising above the de minimis level. *See Othman*, 2018 WL 1701930, at *17 (dismissing state-law assault and battery claims where the court had previously dismissed excessive force claims under § 1983).

With respect to defendant Holfester's brandishing of a weapon, plaintiff asserts a claim of assault, correctly noting that, under New York law, "[a]n action for assault need not involve physical injury, but only grievous affront or threat to the person of the plaintiff." Pl.'s Opp'n at 10 (quoting *Di Gilio v. Burns Int'l Detective Agency*, 359 N.Y.S.2d 688, 689 (App. Div. 1974)). An assault claim under New York law does, however, require proof of "physical conduct placing the plaintiff in *imminent apprehension* of harmful contact." *Bastein v. Sotto*, 749 N.Y.S.2d 538, 539 (App. Div. 2002) (emphasis added). It is uncontested that, at the time of the pursuit, plaintiff did

16

not know that defendant Holfester had unholstered his gun, but rather merely felt a "cold touch" on his shoulder. Def.'s 56.1 Statement ¶ 29. Since plaintiff did not know defendant Holfester was brandishing a gun, it follows that he cannot have been in "imminent apprehension of harmful contact" from that gun. Therefore, plaintiff's assault claim related to the alleged brandishing of a weapon cannot survive summary judgment, either.

Finally, plaintiff's argument that defendants are not entitled to qualified immunity under New York law is unavailing. As plaintiff observes, New York law provides that law enforcement officers are "entitled to qualified immunity on state law claims if their actions are 'objectively reasonable.'" Pl.'s Opp'n at 10 (quoting *Pleva v. Cnty. of Suffolk*, 202 N.Y.S.3d 240, 243 (App. Div. 2023)). As I explained above, even adopting plaintiff's accounting of the facts, defendants' actions, including the use of the alleged chokehold, were objectively reasonable given the circumstances of plaintiff's attempted flight from arrest. Moreover, while the New York courts have stated that "the question of whether the use of force was reasonable under the circumstances is *generally* best left for a jury to decide," *Williams v. City of New York*, 12 N.Y.S.3d 256, 258 (App. Div. 2015) (emphasis added and internal quotation marks omitted), they have also clearly explained that the standard to be applied in such cases is "the objective reasonableness standard of the Fourth Amendment," *id.* Thus, having already found that the defendant deputies are entitled to qualified immunity under that standard, I conclude that they are also entitled to qualified immunity under New York law. I therefore grant summary judgment to defendants on plaintiff's assault and battery claim in its entirety.

### III. Plaintiff's Unlawful Search Claim

I turn now to plaintiff's tenth cause of action, which is brought under 42 U.S.C. § 1983 and asserts a claim of an unlawful search in violation of plaintiff's rights under the Fourth Amendment.

*See* Compl. ¶¶ 107–14. Specifically, plaintiff characterizes the removal of his pants, which he claims was caused by defendant Holfester during the pursuit, as an "unlawful strip search." Pl.'s Opp'n at 11. Defendants seek summary judgment on this claim because, according to them, it is undisputed that "the removal of [plaintiff's] pants was incidental to the pursuit" rather than part of a strip search. Defs.' Mot. at 11. As I explain in further detail below, I agree with defendants that the above occurrence was not an unlawful search.

As defendants note, the Second Circuit has described a variety of circumstances in which a search of a suspect's body by police officers may, depending on the facts of the case, be unlawful. First, "a 'strip search' occurs when a suspect is required to remove his clothes." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 158 (2d Cir. 2013). Second, "a 'visual body cavity search' is one in which the police observe the suspect's body cavities without touching them (as by having the suspect [] bend over, or squat and cough, while naked)." *Id.* Finally, "a 'manual body cavity search' occurs when the police put anything into a suspect's body cavity, or take anything out." *Id.* Plaintiff's complaint does not allege that defendants required him to remove his clothing, nor does it allege that defendants performed a visual or manual body cavity search. *See* Defs.' Mot. at 12. Moreover, plaintiff has himself admitted, in sworn testimony, that the removal of his clothing was "incidental to [defendant Holfester] trying to restrain him." Defs.' 56.1 Statement ¶ 88. Thus, plaintiff does not present evidence that the removal of his pants constituted a search at all, let alone an unlawful one. Indeed, the only reasonable reading of the record is that set forth by defendants: "[T]he removal of [p]lantiff's pants was accidental and only occurred because [p]laintiff was attempting to flee from arrest." Defs.' Mot. at 12. I therefore grant defendants summary judgment on this claim.

18

### IV.  Plaintiff's Remaining Claims

In addition to the claims discussed above, plaintiff's complaint raises more claims under 42 U.S.C. § 1983, including a claim of failure to intervene, Compl. ¶¶ 72–79, a claim alleging denial of plaintiff's right to a fair trial, *id.* ¶¶ 80–90, a claim of malicious prosecution, *id.* ¶¶ 97–106, and a claim against defendant Suffolk County pursuant to *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978), Compl. ¶¶ 115–23. The complaint also raises additional state-law claims, namely claims of negligence, *id.* ¶¶ 56–60, negligent hiring/training, *id.* ¶¶ 61–67, intentional and/or negligent infliction of emotional distress, *id.* ¶¶ 68–71, and malicious prosecution, *id.* ¶¶ 91–96. For the reasons that follow, I grant defendants summary judgment on all of these remaining claims.

First, plaintiff has explicitly abandoned his claims under § 1983 for malicious prosecution and denial of his right to a fair trial. *See* Pl.'s Opp'n at 1. Furthermore, while defendants have moved for summary judgment on all counts of the complaint, plaintiff's brief in opposition contains no discussion of any of plaintiff's claims besides those for excessive force, assault and battery, and unlawful search. Defs.' Reply at 1–2; *see generally* Pl.'s Opp'n. Since plaintiff has failed to address defendants' arguments for summary judgment on any of his remaining claims, these claims have been abandoned, and defendants are therefore entitled to summary judgment on those claims. *See Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.").

19

## CONCLUSION

For the foregoing reasons, I GRANT defendants' motion for summary judgment in its entirety. The Clerk of Court is respectfully directed to enter judgment accordingly and close the case.

SO ORDERED.

/s/
Allyne R. Ross
United States District Judge

Dated:    December 20, 2024
          Brooklyn, New York